**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| The Cincinnati Insurance Company,<br><br>Plaintiff,<br><br>-v-<br><br>Haier Group Corporation, Haier Dalian Electrical Appliances Co, LTD., and Wanbao Group Compressor Co. LTD,<br><br>Defendants. | 2:24-cv-6618<br>(NJC) (AYS) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff The Cincinnati Insurance Company ("Cincinnati") filed this negligence, products liability, and breach of warranty action against Haier Group Corporation and Haier Dalian Electrical Appliances Co., Ltd. (together, "Haier Defendants"), and Wanbao Group Compressor Co. Ltd. ("Wanbao" and collectively, "Defendants"), on September 19, 2024. (Compl., ECF No. 1.) Cincinnati's claims arise out of damage to a property insured by Cincinnati (the "Property") after a compressor manufactured by Wanbao used in a refrigerator manufactured by Haier malfunctioned and caused a fire. (Am. Compl. ECF No. 35 at ¶¶ 1–23.)

Before the Court is Wanbao's motion to dismiss the Amended Complaint for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), and motion to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6). For the reasons that follow, all claims asserted against Wanbao in the Amended Complaint are dismissed under Rule 12(b)(2) for lack of personal jurisdiction. Accordingly,

Wanbao's motion to dismiss the claims set forth in the Amended Complaint under 12(b)(6) is dismissed as moot.

## BACKGROUND

Cincinnati is a corporation organized under Ohio law and maintains its principal place of business in Ohio. (Am. Compl. ¶ 1.) Defendant Haier Group Corporation is a foreign corporation organized under the laws of the People's Republic of China and maintains a principal place of business in Shandong, China. (*Id.* ¶ 3.) Similarly, Defendant Haier Dalian Electrical Appliances Co., Ltd. is a foreign corporation organized under the laws of the People's Republic of China and maintains its principal place of business in Dalian, China. (*Id.* ¶ 4.) Wanbao Group Compressor Co., Ltd. is also a foreign corporation organized under the laws of the People's Republic of China and maintains a principal place of business in Guangdong, China. (*Id.* ¶ 5.)

Wanbao engages in the business of designing, manufacturing, distributing, and placing into the stream of commerce refrigerator compressors and other refrigerator-component parts. (Am. Compl. ¶ 13.) It is not licensed or registered to do business in New York, nor does it maintain an office, warehouse, place of business, or bank account in New York. (Decl. of JingZhao Li ("Lee Decl."), ECF No. 27-2 ¶¶ 4–7.) All of its factories are located in mainland China. (*Id.* ¶ 15.) Wanbao does not advertise any of its products in New York, nor does it sell products or services directly to end consumers of refrigerators. (*Id.* ¶ 24.)

The Haier Defendants are in the business of manufacturing, designing, assembling, and placing into the stream of commerce refrigerators and refrigerator-related products and component parts. (Am. Comp. ¶ 12.) Haier refrigerators contain compressors manufactured by Wanbao. (*Id.* ¶ 13; Lee Decl. ¶ 16.) Wanbao delivers all of its products to Haier in China, Thailand, or Vietnam, and has never delivered any products to Haier in New York or the United

States. (Lee Decl. ¶ 16.) Furthermore, Wanbao does not have an exclusive sales or distribution agreement with Haier, and it does not exercise any control or discretion over its products after they are delivered to Haier. (*Id*. ¶¶ 17–18.)

On September 26, 2022, the electrical connections on the exterior of a compressor manufactured by Wanbao and used in a refrigerator manufactured by the Haier Defendants (the "Refrigerator") experienced an arc failure, resulting in a fire. (*Id*. ¶¶ 17–22.) The Refrigerator was located in the Property owned by 150 Motor Parkway LLC ("150 Motor Parkway") and managed by Bonvi Management LLC ("Bonvi"). (*Id*. ¶¶ 10–11.) At all times relevant to this litigation, the Property was covered under a property insurance policy that Cincinnati had issued to 150 Motor Parkway and Bonvi. (*Id*. ¶¶ 11, 18.) As a result of the September 26, 2022 fire, the Property experienced damages in excess of $75,000. (*Id*. ¶ 23.)

**PROCEDURAL HISTORY**

Cincinnati commenced this litigation by filing a Complaint on September 19, 2024. (ECF No. 1.) This case was initially assigned to Magistrate Judge Anne Y. Shields and then reassigned to this Court's docket on July 7, 2025. (Elec. Order, Jul. 7, 2025.)

On July 15, 2025, Wanbao filed a letter seeking a conference ahead of its anticipated motion to dismiss the Complaint for lack of personal jurisdiction under Rule 12(b)(2) and failure to state a claim under Rule 12(b)(6). On July 16, 2025, I issued an order waiving the pre-motion conference requirement and set a briefing schedule for Wanbao's anticipated motion. After receiving an extension of time, Wanbao served its motion to dismiss on Cincinnati on August 18, 2025. (ECF No. 21; Elec. Order, Jul. 30, 2025; ECF No. 22.)

Pursuant to this Court's recommended bundling practice, on October 16, 2025, Wanbao filed its motion to dismiss the Complaint for lack of personal jurisdiction and for failure to state a

claim (the "Motion") along with a declaration from Steven Lee, a Key Account Manager at Wanbao, attesting to specific jurisdictional facts. (Mem. ISO Mot. to Dismiss ("Mot."), ECF No. 27-1; Lee Decl., ECF No. 27-2.) That same day, Cincinnati filed its opposition to Wanbao's motion (Opp., ECF No. 28), and Wanbao filed its reply (ECF No. 29).

On January 20, 2026, Cincinnati moved to file an Amended Complaint to correct a small factual error in the initial Complaint. (ECF No. 34.) The Court granted Cincinnati's motion on January 27, 2026, and Cincinnati filed the Amended Complaint that same day. (Elec. Order, Jan. 27, 2026; ECF No. 35). The Amended Complaint is identical to the Complaint in all material respects and is the operative complaint in this litigation. Thus, the Court understands that Wanbao's motion to dismiss the Complaint is directed at the Amended Complaint. Accordingly, the Motion is fully briefed.

**LEGAL STANDARDS**

On a motion to dismiss under Rule 12(b)(2), "plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*, 828 F. App'x 740, 742 (2d Cir. 2020) (quoting *DiStefano v. Carozzi N. Am. Inc.*, 286 F. 3d 81, 84 (2d Cir. 2001)). At the motion to dismiss stage, a "plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." *Id.* Accordingly, "a complaint will survive a motion to dismiss for want of personal jurisdiction so long as its allegations, taken as true, are legally sufficient allegations of jurisdiction." *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (internal quotation marks omitted); *see also Holmes v. Apple Inc.*, 797 F. App'x 557, 559 (2d Cir. 2019) (at the motion to dismiss stage, "a plaintiff must 'include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'")

(quoting *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). As such, "conclusory allegations based only on information and belief are not sufficient to provide such factual support." *Jerusalem NY Enters. LLC v. Huber Erectors & Hoisting, LLC*, No. 21-cv-376, 2021 WL 5827934, at *3 (E.D.N.Y. Dec. 8, 2021) (internal quotation omitted).

In resolving a motion to dismiss under Rule 12(b)(2), a district court may consider materials outside of the pleadings "without converting a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). Furthermore, the court must "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Can. Bank, SAL (Licci IV)*, 732 F.3d 161, 167 (2d Cir. 2013). However, the court "will not draw argumentative inferences in the plaintiff's favor, nor must [the court] accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation omitted).

## DISCUSSION

On a motion to dismiss for lack of personal jurisdiction, courts engage in a two-part analysis. *Chloe*, 616 F.3d at 163. First, the district court must consider whether it has "a statutory basis for exercising personal jurisdiction." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013). "[T]he existence of such a statutory basis [for personal jurisdiction] is determined by the law of the state in which the court is located." *Troma Entm't, Inc.*, 729 F.3d at 218. Because the Eastern District of New York is located in New York, I apply New York law and analyze whether New York's long-arm statute permits the exercise of personal jurisdiction. *See Chloe*, 616 F.3d at 163; *see also* New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") §§ 301–302.

Second, if state law permits the exercise of personal jurisdiction, the district court must then evaluate whether the exercise of personal jurisdiction over the defendant comports with due process. *Sonera Holding B.V. v. Çukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (per curiam) (citation omitted); *see also Licci*, 673 F.3d at 60 ("In this case, because the plaintiffs' assertion of personal jurisdiction rests upon a state long-arm statute, the relevant constitutional constraints are those imposed by the Due Process Clause of the Fourteenth Amendment."). The constitutional analysis "has two related components: the minimum contacts inquiry and the reasonableness inquiry." *Chloe*, 616 F.3d at 164 (internal citations omitted). With respect to minimum contacts, the district court must "determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id*. And with respect to the reasonableness inquiry, the district court assesses "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id.*

Wanbao argues that this Court cannot exercise jurisdiction under any provision of New York's long-arm statute, N.Y. C.P.L.R. §§ 301, 302(a)(1), (a)(2), or (a)(3) ("Section 301," "Section 302(a)(1)," "Section 302(a)(2)," and "Section 302(a)(3)"). (Mot. at 6–11.) It further contends that, even if New York's long-arm statute does supply a basis for exercising personal jurisdiction, the exercise of jurisdiction over Wanbao would violate due process requirements because Wanbao lacks minimum contacts with New York and the exercise of jurisdiction would not be reasonable. (*Id*. at 11–15.)

In opposition, Cincinnati argues that the the requirements of Section 302(a)(1) and Section 302(a)(3)(ii) of New York's long-arm statute are satisfied and that the exercise of

jurisdiction over Wanbao would comport with due process. (Opp. 6–17.) Cincinnati does not oppose, and therefore concedes, Wanbao's argument that neither Section 301 nor Section 302(a)(2) permit the Court to exercise personal jurisdiction over Wanbao. *See Farag v. XYZ Two Way Radio Serv., Inc.*, No. 22-cv-1795, 2023 WL 2770219, at *2 (2d Cir. Apr. 4, 2023) ("In a 'counseled' case, 'a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.'") (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)); *AJ Energy LLC v. Woori Bank*, No. 18-cv-3735, 2019 WL 4688629, at *7 (S.D.N.Y. Sept. 26, 2019) ("It is well established that a district court may, and generally will, deem a claim abandoned when a counseled plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (cleaned up) (citing cases)), *aff'd*, 829 F. App'x 533 (2d Cir. 2020) (summary order).

For the reasons set forth below, neither Section 302(a)(1) nor Section 302(a)(3)(ii) of New York's long arm statute permit the Court to exercise personal jurisdiction over Wanbao.

## I. N.Y. C.P.L.R. § 302(a)(1)

Under Section 302(a)(1), "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state[.]" N.Y. C.P.L.R. § 302(a)(1). "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (brackets and citations omitted). "If either prong of the test is not met, jurisdiction cannot be conferred under CPLR 302(a)(1)." *Lewis v. Samsung SDI Co.*, No. 23-cv-6643, 2025 WL 1826471, *6 (S.D.N.Y. July 2, 2025), *appeal dismissed sub nom. Lewis v.*

*Samsung, Inc.*, No. 26-80, 2026 WL 2021493 (2d Cir. June 17, 2026). Furthermore, Section 302(a)(1) "is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Chloe*, 616 F.3d at 170.

Courts define "transacting business" as "purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting business activities within the forum State, thus invoking the benefits and protections of its laws." *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 639 (2d Cir. 2023). Courts must look "'to the totality of the defendant's activities within the forum' to determine whether a defendant has 'transact[ed] business' in such a way that it constitutes 'purposeful activity' . . . ." *Lewis*, 2025 WL 1826471, *6. Some factors relevant to the Court's consideration of "whether a defendant has 'purposefully availed' itself of the forum state," include:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Mavashev v. Kaldykulov*, No. 22-cv-906, 2024 WL 1345802, at *3–4 (E.D.N.Y. Mar. 30, 2024) (citation omitted). Nonetheless, "the 'mere shipment' of goods into New York is not a 'transaction of business'" under Section 302(a)(1), *Dunn v. S. Charters, Inc.*, 506 F. Supp. 564, 568 (E.D.N.Y. 1981), nor is "the 'mere solicitation of business within the state . . .' absent some other New York-directed activities." *Mavashev*, 2024 WL 1345802, at *4.

Here, Cincinnati has failed to adequately allege or demonstrate that Wanbao transacted

business in New York and thereby invoked the benefits and protections of its laws. As a preliminary matter, the Amended Complaint lacks any allegations whatsoever describing any business activities conducted by Wanbao in New York. Rather, the Amended Complaint alleges that Wanbao is a foreign corporation organized under the laws of the People's Republic of China, which has a principal place of business in the People's Republic of China and is "engaged in the business of designing, manufacturing, assembling, marketing, servicing, inspecting, installing, selling, distributing, warranting and placing into the stream of commerce refrigerator compressors and/or other refrigerator-related component parts" that were "incorporated into the refrigerators of the Hair Defendants." (Am. Compl. ¶¶ 13, 15.) However, the Amended Complaint alleges that the Haier Defendants "plac[ed] said refrigerator on the market for sale" and "placed into the stream of commerce a refrigerator that was eventually placed into and located within the [New York-based] Property." (*Id.* ¶ 16.) These allegations do not describe any Wanbao contracts, business operations, sales, physical locations or visits in New York suggesting that Wanbao transacted business in this state. *See Mavashev*, 2024 WL 1345802, at *3–4.

Looking beyond the allegations in the Amended Complaint, Cincinnati relies on two websites that list Wanbao compressors for sale online—nwfsupply.com[1] and hubhvacr.com[2] (the

[1] The full website link submitted in the Underwood Declaration is https://nwfsupply.com/products/wanbao-asf35y6-direct-replacement-refrigeration-compressor-r134a?variant=41231173419203&country=US&currency=USD&utm_medium=product_sync&utm_source=google&utm_content=sag_organic&utm_campaign=sag_organic&gad_source=1&gad_campaignid=20350578684&gbraid=0AAAAAoa36NJfTrMrID40nOQ5-g7QBeBes&gclid=Cj0KCQjw_L_FBhDmARIsAItqgt40jfxItiRJTeW6Nn6FjgbY6qeb5AncjYLjXK0oqWSyxc9uHgqNGcoaApwZEALw_wcB. (Underwood Decl. ¶ 9a.)

[2] The full website link submitted in the Underwood Declaration is https://hubhvacr.com/huaguang-compressor-supplier/. (Underwood Decl. ¶ 9b.)

"Third-Party websites"). (Aff. in Opp. to Mot. ("Underwood Decl."), ECF No. 28 ¶ 9.) It also relies on two websites listing for sale online Haier refrigerators that allegedly include Wanbao compressors—wayfair.com[3] and homedepot.com[4] (the "Retailer websites"). (*Id.* ¶ 10.) None of these websites show that Wanbao, "in person or through an agent . . . transacts any business within" New York or "contracts anywhere to supply goods or services in" New York as required by Section 302(a)(1). N.Y. C.P.L.R. § 302(a)(1).

The Third-Party websites are not operated by Wanbao, do not list Wanbao as the seller, and do not include any Wanbao contact information; rather, they are third-party websites that sell Wanbao products. (*See* Underwood Decl. ¶ 9.) As such, these websites do not provide a basis for personal jurisdiction over Wanbao because they do not show that *Wanbao* conducted business in New York and thereby purposefully availed itself of New York laws. *See Alvarado v. Samsung Electronics America, Inc.*, No. 156617/2021, 2024 WL 890290, at *4 (N.Y. Sup. Ct. Feb. 29, 2024) (finding that online sales listings from third party sellers "are insufficient to infer that [defendant] purposefully projected itself into New York via a 'sustained and substantial transaction of business'" as required under Section 302(a)(1)). This stands in contrast to cases in which courts have found personal jurisdiction where a defendant uses third-party fulfillment services and sellers, such as Amazon, to sell its products in New York. *See, e.g.*, *Lifeguard*

---

[3] The full website link submitted in the Underwood Declaration is https://www.wayfair.com/Haier--Haier-French-28-26.875-Door-Refrigerator QJS15HYRFS-L881-K~GEAP2204.html?refid=FR49-GEAP2204. (Underwood Decl. ¶ 10a.)

[4] The full website link submitted in the Underwood Declaration is https://www.homedepot.com/p/Haier-9-8-cu-ft-Top-Freezer-Refrigerator-in Stainless-Steel-HA10TG21SS/302071894?source=shoppingads&locale=en US&srsltid=AfmBOorabTJcWyHHHEmXlJmmDbfD4qoCx0iYnsQatURVB WpGtWfPn0y3ME (Underwood Decl. ¶ 10b.)

*Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15-cv-8459, 2018 WL 3364388, at *8 (S.D.N.Y. July 9, 2018) (finding personal jurisdiction where "Defendants systematically targeted the New York market by deliberately tagging 10,000 of their products with New York related keywords in Amazon's mega-tag field so that these products would appear in a search result on Amazon.com if the customer searched for a New York themed product"); *EnviroCare Techs., LLC v. Simanovsky*, No. 11-cv-3458, 2012 WL 2001443, at *4 (E.D.N.Y. June 4, 2012) (finding personal jurisdiction where the defendants had an Amazon storefront and "marketed and sold their products exclusively through Amazon and eBay, and, as of October 2011, entered into at least 46,000 separate transactions with individual buyers across the country," including New York). By contrast here, the Underwood Declaration and the allegations in the Amended Complaint fail to show any connection between the Third-Party websites selling Wanbao products and Wanbao itself.

Furthermore, nothing in the factual record suggests that New York consumers interacted with either of the Third-Party websites. The mere existence of the websites and the speculative ability of New York consumers to purchase products on them—without any allegations linking Wanbao to the placement of its products for sale on those websites or demonstrating that New York consumers transacted business through them—cannot confer personal jurisdiction over Wanbao under Section 302(a)(1). *See Minden Pictures, Inc. v. Grupo Televisa, S.A.B.*, 738 F. Supp. 3d 458, 465 (S.D.N.Y. 2024) ("Because there are no unrefuted allegations that . . . New York consumers actually transacted business through these websites, 'the mere availability of the site[s] to users in New York, standing alone, does not amount to transacting business in the state for purposes of section 302(a).'"); *Truck-Lite Co., LLC v. Grote Indus., Inc.*, No. 18-cv-599, 2019 WL 3714599, at *3 (W.D.N.Y. Apr. 2, 2019) ("Defendant's use of its website to sell its

products, without more, is not enough to establish personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1)"), *report and recommendation adopted*, No. 18-cv-599, 2020 WL 5793297 (W.D.N.Y. Sept. 29, 2020).

The Retailer websites fare no better for the same reasons: the Amended Complaint and Underwood Declaration lack any allegations connecting conduct by Wanbao to those websites. The mere fact that Wanbao products are used in Haier refrigerators that are then sold on the Retailer websites for purchase by consumers in the United States cannot justify this Court's exercise of personal jurisdiction over Wanbao under Section 302(a)(1). Accordingly, based on the allegations of the Amended Complaint and considering all of the information set forth in the Underwood Declaration, there are no plausible allegations that Wanbao transacted business in New York and thereby invoked the benefits and protections of New York law such that this Court may exercise personal jurisdiction under Section 302(a)(1).

## II. N.Y. C.P.L.R. § 302(a)(3)(ii)

Section 302(a)(3) provides that a court has personal jurisdiction over an out-of-state defendant who "commits a tortious act without the state causing injury to person or property within the state" if the defendant "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3)(ii). In order for a district court to exercise jurisdiction under Section 302(a)(3)(ii), a plaintiff must demonstrate that:

> (1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce.

*Yak v. BiggerPockets, L.L.C.*, No. 20-3498, 2022 WL 67740, at *2 (2d Cir. Jan. 7, 2022).

Wanbao argues that the Court cannot exercise personal jurisdiction under Section 302(a)(3)(ii) because it is a Chinese manufacturer and could not have reasonably expected that its actions would have consequences in New York because it made no discernible efforts to directly or indirectly serve the New York market. (Mot. at 9–11.)

The test for whether a defendant should have reasonably expected that its actions would have consequences in New York is "objective rather than subjective." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999). "[T]he simple likelihood or foreseeability that a 'defendant's products will find its way into New York does not satisfy [the reasonable-expectation requirement]' . . . ." *Id*. Rather, a defendant "must have made a discernible effort to directly or indirectly serve the New York market." *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 132 (S.D.N.Y. 2020). "[O]ccasional sales into New York, or awareness of a possibility that a product will find its way into New York, is not sufficient to satisfy this element." *Id*.

The Second Circuit's decision in *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999), is instructive. In *Kernan*, the Second Circuit considered whether a New York court could exercise personal jurisdiction over a Japanese manufacturer of a machine that caused injuries to an individual in New York, where the Japanese manufacturer's distributor in Pennsylvania sold the machine to that individual's New York-based employer. *Kernan*, 175 F.3d at 238–39. While recognizing that the decision was a "close question," the Second Circuit affirmed the district court's finding of personal jurisdiction under Section 302(a)(3)(ii) and highlighted the fact that the Japanese manufacturer had an "*exclusive* sales agreement" with its Pennsylvania-based distributor that gave the distributor the right to sell the Japanese manufacturer's products anywhere outside of seventeen specific countries in Asia. *Id*. at 242 (emphasis added). The court

also found salient that the exclusive sales agreement between the Japanese manufacturer and the Pennsylvania-based distributor "also provided for the exchange of information relevant to product development, as well as pricing information . . . ." *Id.* The Second Circuit contrasted its finding of jurisdiction with the decision of a New York state court, which found that it lacked personal jurisdiction over a German manufacturer of a meat packaging machine that sold its machines to a Massachusetts-based company. *Id.* at 241 (citing *Schaadt v. T.W. Kutter, Inc.*, 564 N.Y.S.2d 865, 866 (1991)). In the latter case, the plaintiff "failed to adduce evidence that the German company had attempted, directly or indirectly, to serve the New York market, and that the sole fact that the company had sold its products to a Massachusetts company, which then sold the machines throughout the United States, was insufficient to satisfy § 302(a)(3)(ii)'s 'reasonable expectation' requirement." *Id.* at 241 (citing *Schaadt*, 564 N.Y.S.2d at 866).

Since the Second Circuit's decision in *Kernan*, district courts have routinely found that they lack personal jurisdiction over foreign manufacturers of goods distributed in the United States where the record fails to allege similar distribution agreements between a foreign manufacturer and the distributor marketing goods in the United States. *See, e.g.*, *Lewis*, 2025 WL 1826471, at *8 (finding the court lacked personal jurisdiction over a foreign manufacturer where "[u]nlike in *Kernan*, Plaintiff cannot point to an exclusive sales or distribution agreement between [the manufacturer] and the third-party distributor in order to confer jurisdiction" and "the record contains no evidence of discernible efforts on the part of [the manufacturer] to reach or serve the New York market, or even the United States market"); *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 132 (S.D.N.Y. 2020) (finding that the court lacked personal jurisdiction under Section 302(a)(3)(ii) where the defendant did "not have *any* agreements with New York-based distributors or exclusive agreements with any U.S.-based distributors, and

generally sells its products free-on-board out of factories and ports in [Indonesia] to customers who take possession of the products and then resell them in the United States and elsewhere without any further involvement") (emphasis in original); *cf. Ikeda v. J. Sisters 57, Inc.*, No. 14-cv-3570, 2015 WL 4096255, at *5 (S.D.N.Y. July 6, 2015) (finding personal jurisdiction under Section 302(a)(3)(ii) where the defendant sold its products exclusively through a domestic distributor, which then sold the products in New York).

Here, the record lacks any evidence that Wanbao sold its products to Haier (a Chinese corporation) or to any United States company or distributor engaged in sales in the United States pursuant to a sales and distribution agreement targeting customers in New York. In fact, Steven Lee, Wanbao's Key Account Manager, attests: (1) that Wanbao does not have a distributor or retailer in New York (Lee Decl. ¶ 14); (2) that Wanbao does not advertise in New York (*id.* ¶ 21); (3) that Wanbao has never authorized any person or entity to sell or distribute any of its products directly in New York (*id.* ¶¶ 14, 19); and (4) that Wanbao does not have an exclusive manufacturing arrangement with Haier, the manufacturer of the refrigerator involved in the underlying accident in this litigation (*id.* ¶ 17). Lee also attests that Wanbao does not ship or deliver products to New York or anywhere in the United States. (*Id.* ¶¶ 16, 20, 30.) Rather, Wanbao delivers all its products to Haier in China, Thailand or Vietnam, after which it does not exercise any control or discretion over those products. (*Id.* ¶¶ 16, 18).

The Amended Complaint does not allege any facts that call into question Lee's representations about Wanbao's lack of business operations in the United States. Instead, Cincinnati rests on the repetition of conclusory assertions that "Defendant cannot reasonably argue that it did not reasonably expect the act to have consequences in New York or that they derived substantial revenue from interstate or international commerce" because "Defendant is an

international manufacturing company." (Opp. at 13–14.) But Cincinnati must at least allege facts showing that Wanbao made "a *purposeful* New York affiliation," *Kernan*, 175 F.3d at 241 (emphasis added), or "a discernible effort to directly or indirectly serve the New York market," *Astor Chocolate Corp.*, 510 F. Supp. 3d at 132. As a result, the Amended Complaint fails to plead sufficient facts demonstrating that Wanbao expected or should reasonably have expected that its manufacture of refrigerator compression products would have consequences in New York such that a court in this state may exercise personal jurisdiction under Section 302(a)(3)(iii). *See Krisko v. Marvel Ent., LLC*, 473 F. Supp. 3d 288, 300 (S.D.N.Y. 2020) ("Each element of [N.Y. C.P.L.R. § 302(a)(3)(ii)] is essential, and if plaintiff fails to proffer sufficient evidence for any element, it is dispositive of the issue of personal jurisdiction under this provision.").

Because Cincinnati has failed to demonstrate that this Court can exercise personal jurisdiction over Wanbao under Section 302(a)(1) or Section 302(a)(3), the Court need not consider whether the exercise of personal jurisdiction would satisfy due process. *See Yak*, No. 20-3498, 2022 WL 67740, at *2 ("Because Yak has failed to make a prima facie showing of jurisdiction under § 302(a)(3)(ii), we need not consider whether the exercise of jurisdiction here would comport with due process protections."); *see also NuMSP, LLC* v. *St. Etienne*, 462 F. Supp. 3d 330, 354 (S.D.N.Y. 2020) ("Because jurisdiction is lacking under New York law, the Court need not address whether it would be consistent with federal due process requirements."); *Lewis*, 2025 WL 1826471, at *9 ("This Court simply may not exercise personal jurisdiction over [defendant].").

**CONCLUSION**

For the reasons set forth above, Wanbao's motion to dismiss the Amended Complaint for lack of personal jurisdiction is GRANTED, and all claims asserted against Wanbao in the

Amended Complaint are therefore dismissed under Rule 12(b)(2). As a result of this dismissal, Wanbao's motion to dismiss the claims against in under Rule 12(b)(6) is dismissed as moot.

Dated: Central Islip, New York
September 29, 2026

*/s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge